Good morning. May it please the court. My name is Peter Wolfe. I represent Mr. and Mrs. Ross in this appeal from the denial of a 2255 petition. You held your hand up? I'm saying speak up. OK. It says don't touch these microphones, otherwise I'd be inclined to move them forward. So our primary argument here is that Mr. Ritchie, who during the trial was counsel for David Ross, but who for years before the charges actually occurred was representing both Mr. and Mrs. Ross and had been retained to solve their tax problems, provided ineffective assistance of counsel. And he did so because by the time the trial came, he was laboring under an actual conflict of interest. And the conflict that he had was between his interest in not being called out for providing erroneous advice, improper advice, for preserving himself, and his interest in representing his clients, which was his primary goal. I understand that that would be a genuine conflict of interest if he had given genuinely bad advice that he didn't want to fess up to, and that advice, if he admitted it, would help the client. On the other hand, you had a hearing in front of Judge Ezra, and as I read Judge Ezra's conclusions, he didn't give the bad advice that Mr. Ross says he gave. How do we deal with that? I think we deal with it by looking at what Mr. Ritchie's own testimony was in that hearing. So he indicated that he told the Rosses to keep doing what they were doing. Well, but Judge Ezra, let me interrupt for a second because I'd like you to focus on this. I think that's a finding Judge Ezra made. Is that unsupported by the record? I wouldn't say it's completely unsupported by the record, but I don't think that was a fair reading of the record. Because the key aspect that Mr. Ritchie knew when he was retained in the beginning was that the Rosses were relying on advice they had received from, I guess we called it in our briefs, the Hardy Group. And that's a group of people who were headed by Lamar Hardy, who himself was convicted of serious tax violations, actually, before the Rosses were. And so the government's primary contention in the trial was that their good faith reliance defense was just absurd because no sensible person, or really any person, who wasn't willfully evading their taxes would have relied on this kind of advice. But their second argument, their backup argument, was that the proof of the willfulness, the proof of the evasion, and evasion is a continuing offense, which can take place actually well after the tax years in question don't have a return file. The proof of that was that after they retained counsel, they continued to do what they were doing. And this was even after Revenue Officer Orbie Groves met with David Ross and told him, you need to retain competent counsel and come into compliance. So we know that the jury deliberated for three days. So if argument number one of the government's, which was nobody who was not a criminal would rely on the Hardy materials, at least we can infer that that argument was rejected by the jury. And the jury spent the three days they were deliberating, thinking about whether or not the Rosses had willfully evaded the taxes by what happened, and this was the government's argument, after they retained counsel. So the role of Mr. Ritchie leading up to the trial was critical. But would we have to find that the district court's findings were clearly erroneous? Because the district court indicated that Ritchie's advice was based on his belief that Ross was complying with law, that the companies were legitimate, that all filed returns. That's what the district court held. What you're arguing is that no reasonable person could think that relying on this Hardy group was legitimate. So are you asking us to determine that the district court's findings were clearly erroneous? Well, if that's the court feeling, I guess I am asking you to do that. But don't you have to? Don't we have to find them clearly erroneous for you to prevail? Judge Ezra says what your clients are contending isn't true, as a matter of fact, that the advice that they got from Ritchie was based on their representations that they were complying with the law and it had to do with their businesses, and you're saying that's not true. So I take it you must have to persuade us that Judge Ezra was clearly erroneous in finding that. Well, since two or three of you have said more or less that, I guess that's true. Well, we may be wrong. I mean, I'm asking you. I'm trying to talk us out of that position. Well, I don't think I want to talk you out of that position. Before you move on, though, with respect to Mrs. Ross, who was independently represented at the trial, and I know that may not be one of the certified issues, but why should we, even if we were to find an actual conflict as to Mr. Ross, why would we find one as to Mrs. Ross, who had her own counsel? Well, maybe you wouldn't, but the reason why her case would be disposed of the same as his, if you found the actual conflict, is because of the teaching of the circuit itself, which in the Ullah case and the Brooks case and the Walter case, and this is a quote from Ullah, said the following, it is manifestly unjust to reverse the conviction of one co-defendant, but to uphold the conviction of another co-defendant when the same error affected both defendants. Well, but I guess my question is why would the error affect her representation at trial if she was independently represented? Because the testimony that Richie could have provided, or the testimony that David Ross could have provided if it hadn't been so circumscribed by Judge Ezra after he mistakenly said to Richie or to the defendants, I'm not allowing Richie to testify because that would hurt the defendants, because Richie would either have to say that I told them to file their taxes or Richie would have to admit that he himself was in effect aiding and abetting criminal conduct. He'd have to surrender his license. So that testimony was equally relevant to Mrs. Ross. So I think everyone conceded the government and the judge and the sentencing was far less responsible for what happened here than was her husband if any criminal activity took place at all because her sentence was less than half his. And, in fact, when Richie failed to follow up on plea negotiations, once the thing had changed from a civil matter and turned criminal and it could have been resolved with a misdemeanor plea as to him and they wouldn't prosecute her, all of that is why if David Ross's conviction is reversed, then Mrs. Ross's should be as well. But on the narrower point that the Court is talking about as to whether her lawyer had an actual conflict, I would say no. But we did argue that because her lawyer was under the mistaken impression based upon what Richie said during the trial and what Judge Ezra was saying during the trial, that Richie's testimony would have hurt the defendants rather than helped them. He believed that. He went along with that. But in terms of the actual conflict. Was that a mistaken impression? Given Judge Ezra's findings in the 2255 motion, I thought he did find that Richie's testimony would have been detrimental to the Rosses. Well, that's inconsistent with the things that Richie said in the 2255 hearing, that he told them to keep doing what they were doing. But that takes us back to the question of what do we do with Judge Ezra's findings of fact? Well, I think we have to conclude that they were clearly erroneous on that point. Yeah. And I see I've run out of. . . Why don't we hear from the other side and then you will have reserved about a minute. Thank you. Yeah, thank you. May it please the Court. Judges, I'm Ronald Johnson, Assistant United States Attorney. I'm handling this appeal on behalf of Leslie Osborne, Assistant United States Attorney. Okay, and if you can keep your voice up, I would appreciate it. Yes, I will. I think in listening to the interplay between Mr. Wolf and the Court, the Court's hit upon a couple issues that are very critical. One, Judge Ezra did make a finding that if Richie testified, and he said in several points in the record, that it would have been disastrous. Because what we know Richie stated in his affidavit and what he later testified to during the 2255, is that he took the position that what the Rosses were espousing with respect to their tax-to-fire position was frivolous. He couldn't state what law required people to file, but he believed it was frivolous. In addition, he went on to state that he told the Rosses, I file taxes, I pay my taxes because I have income. I always do that. Those two things interjected into the trial at the key moment where the wolfiness issue has now come to a head and Mr. Ross is going to testify that he truly believed this stuff. If Richie had testified, it would have absolutely undermined any possibility of the defense gaining any traction with the jury. I'm reading the joint proffer, and here's the quote. Alan Richie advised David and, I'll mispronounce her name, Lay, not to change their course of conduct. Richie advised David and Lay to continue to file or not file in accordance with the advice and opinions on which they had been relying on prior years. It sounds to me like their trial counsel, or at least Mr. Ross's trial counsel, had given him advice relative to the conduct that was the subject of the charge. Mr. Richie. Mr. Richie had given Mr. Ross advice relevant to the conduct for which he was charged. Why doesn't it pose an actual conflict of interest? Well, for two basic reasons. One, that it's clear from the record that David and Lay Ross were extremely well-educated psychologists, and that they had spent years developing their theories of why taxes don't have to be paid. Through their association with Mr. Hardy and others, Mr. Townley, and the record goes on about a large number of documents that were submitted in support of that theory. That preexisted Mr. Richie's representation. So that's a starting point. Mr. Richie comes in and they say to him, hey, we want to use you, basically, and this is Richie's testimony, to get a meeting with the IRS. But wouldn't the competent counsel have said these tax protester theories are bogus, no court has upheld them, you'd better file, pay your taxes, and plead? I mean, isn't that their theory, that no competent attorney would have said, oh, well, I don't know anything about tax law, so just keep doing what you're doing? Well, the problem is this, that through the representation that Richie maintained when he was initially in on the civil matter before it became criminal, and then as it transitioned, the Ross's actually took inconsistent positions. They were tax protesters and defiers, and Mr. Ross confronted both Mr. Groves and Ms. Connors from the U.S. Attorney's Office and said, show me the statute. Where is the statute? That's his mantra. But this is part of this tax protester program, and they're relying on Sheik in most cases, and then he was starting to get cold feet, I guess, and say, well, maybe I better do something. But I think their theory is competent counsel would have said, yes, you'd better do something, you'd better make things right and try to enter into a plea bargain. Isn't that right, that competent counsel would have done that? Well, there's one other factor that plays in here, is that during the course of the representation, the Ross's, unbeknownst to Richie, subsequently file 03, 04, and I believe 05 tax returns. So now Richie's in the untenable position of saying, well, you had a defense of good faith. If you maintain that, we can put that forth, and we'll finish the issue. Has that good faith position ever prevailed? I mean, it seems like all the cases I've seen, that's a loser. So, I mean, his client now says, oh, maybe I better file, and he says, oh, no, just keep doing what you're doing. The only thing I can say to you, Your Honor, is that you wouldn't see the acquittals. They wouldn't come to you. So if it prevails, it doesn't come to this level where it's presented to this court. I understand this is off the record. Do you know of any acquittals? Your Honor, I know that certain tax defiers have prevailed in isolated instances. I don't know the facts of how they accomplished that. But the tax law is set up to be one of the more difficult for prosecutors to prove because of the willfulness aspect of it. I know you got that. I'm not sure I agree with you or with whoever else might have said that it would be fatal to this defense at trial if it were to come out that Ross had voluntarily, whether voluntarily or not, had filed tax returns for those later years. I mean, a perfectly sensible thing would be to say, well, I totally believe I don't have to, but you guys are going to put me in jail if I don't, or at least you're threatening, so I will do it, even though I think I don't have to. I mean, I don't see how that seriously undermines his other defense. Well, if he could have expressed it that way, it probably wouldn't have. Well, you see, I don't see how it's so hard to express it that way. If it occurs to me, it's got to occur to any other dummy. Your Honor, I think you're in a category far above. But the issue really is with Mr. Ritchie is he was asked by them. They got together prior to this rolling forward to trial. And they had a meeting, and there was a joint defense agreement, and Mr. Green's testimony is that he was hoping that Mr. Ross would take the stand and say that he got involved in this, and then kind of bail out his wife, and that Mr. Ritchie, the issue came up whether or not he should be a witness, and they decided he was more valuable to them as trial counsel. Let me ask another question. That would be a tactical decision. Yeah, and this comes up, of course. I mean, we've seen these tax protester cases before. When Mr. Ross says, show me the statute, at least according to him, the U.S. Attorney and the tax people never show him any statute that requires him to pay taxes. Is that true? That appears to be correct from the record. So why not? I mean, is there no statute? Your Honor, if I were asked that question, I probably would show a defendant the failure to file provision and the evasion provision. And then they ask you, well, but why do those exist? How do they come into being? Who says that that's the law? There's an endless series of spins on why they need to file or follow the law. But as I understand it, they didn't even show him the first statute. No. The first statute, I mean, at some point you've got to put in a statutory provision in the indictment. Correct. I don't get it. Just in terms of just behavior toward a possible criminal defendant, if he asks you or asks somebody in your office, okay, what's the statute that I'm charged with violating, why you don't say, well, here it is. I understand there might be some more questions, and you might at that point say, well, I don't have to answer those. Right. Well, Your Honor, the good answer to that is it probably varies from AUSA to AUSA. I indicated that I probably would have put the codebook in front of him, pointed to the evasion section and the failure to file section. And sooner or later you're going to have to admit that you've got a statute that you're relying on because it's going to show up in the indictment. Yes. I see the time is running down, but I'd like to just respond to a question that was put to Mr. Wolf. You are in a situation where Judge Ezra not only made findings, but he, sitting as the trial judge, was responsible for assessing the credibility of the witnesses who came before him. The Rosses never raised any of this during the preliminary stages of the trial up through their conviction. This didn't seem to be a big issue, and they seemed very confident in the counsel's ability to represent them. At the point at which they're convicted, they turn on Ritchie, and then they file their motion for a new trial. Judge Ezra does an excellent job. Would that matter? Let's assume that he had an actual conflict for just a second. There's no waiver argument here. The fact that they waited until after they were convicted to raise it, Judge Ezra doesn't say, well, you waited too long. Well, but it puts Judge Ezra in somewhat of an untenable position because they crafted a cautionary instruction to deal with the issue, and everybody seemed to be satisfied with that. Had Judge Ezra known that there was a greater concern here, he probably would have taken appropriate steps to address it, and you could see that in his rulings. And the one thing I was alluding to which addressed one of the issues is that Judge Ezra also found that Ritchie's testimony was credible and D. Ross' testimony lacked credibility, and his judgment on the credibility of witnesses who came before him should be given due deference in government. Thank you. Thank you, Your Honor. Mr. Wolf? I guess I would like to try to focus the court on what Judge Ezra said during the trial. And this was at the point where the proposal from the defendants was that Mr. Ritchie be allowed to testify. And this is what the judge said. This is the excerpts at 106-107. He basically was expressing the government would be able to ask Mr. Ritchie about whether he advised his clients that what they were doing was illegal. And I assume if, unless Mr. Ritchie is incompetent or himself doing something illegal and unethical, he would have to testify that he told, this I'm inserting David Ross, that you have to file your taxes. What you did was wrong under the law. Or if he testifies, I told them they didn't have to file their income taxes, then Mr. Ritchie might as well turn his law license in because he would have been guilty and probably faced potential indictment himself for aiding and abetting criminal misconduct. So when a trial judge, a U.S. District Court judge says that to a lawyer, that is a rather significant statement. And I don't think the court ought to evaluate anything that Mr. Ritchie ever said after that or that Judge Ezra said about what happened in the trial after that without remembering that's what happened. And the judge – Did you get – I'm not clear to me. Was the joint proffer submitted to the jury as a stipulated set of facts? I believe it was not. Why not? I – Because it seems to me if it were, then the jury then would have heard the advice of counsel defense. Yeah, I don't – You don't think it was? I think a joint proffer was submitted to the court as a reason why – As part of the argument. As why he ought to allow the testimony, but when he refused to allow the testimony, I don't believe the proffer went in front of the jury. Yeah, I can't find any evidence that it was. That's why I was asking. Okay. Thank you very much. Thank both counsel for your helpful argument. Go ahead. United States v. Ross now submitted for decision.
judges: FLETCHER, IKUTA, HURWITZ